# Borough of South Waverly, Appt., *v.* New York, Lackawanna & Western Railroad Company.

A railroad company chartered under the general railroad act of April 4, 1868, has, under the act of February 19, 1849, the right to construct its road over the streets of an incorporated borough, upon making compensation to property owners; and in so doing it is not a trespasser.

The manner of crossing the streets of a borough by such railroad company rests in the sound discretion of the company; and nothing less than a gross abuse of that discretion will justify the interference of a court of equity, after the road is built and in operation.

A resolution was adopted by the common council of a borough, incorporated under the general borough laws, to the effect that a certain railroad company might cross certain streets in the borough by a grade crossing and that the company should "have the privilege of crossing the other streets of this borough according to their present location, bridging Fulton, Loder, and Chemung streets." The company accepted this resolution and built wagon bridges over its track at Chemung and Loder streets, but did not build any bridge at Fulton street. After the construction of the railroad the borough filed a bill alleging the improper obstruction of certain streets by the railroad and setting out the above resolution and its acceptance, and seeking to compel the company to remove the obstructions alleged to have been created in certain streets by its track, and to erect foot bridges at Chemung and Loder streets in addition to the wagon bridges, and bridges at Fulton street. *Held,* that the bill was not maintainable; that it did not present a case calling for the interference of the court to direct the overhauling and reconstruction of the railroad; and that if the contract claimed by the borough to have been created by the said resolution and its acceptance by the company, was a valid contract (which is not decided) and had been violated, the borough had an adequate remedy at law.

(Argued March 16, 1887.   Decided October 3, 1887.)

January Term, 1887, No. 71, E. D., before Mercur, Ch. J., Gordon, Paxson, Trunkey, Sterrett, and Green, JJ. Appeal from a decree of the Common Pleas of Bradford County dismissing a bill in equity. Affirmed.

The original bill was filed July 2, 1881, by the borough of South Waverly, a municipal corporation created under the general borough laws, against the New York, Lackawanna, & West-

NOTE.—For the right of a railroad to occupy streets without municipal consent, see Pittsburg v. Pittsburg, C. & W. R. Co. 205 Pa. 13, 54 Atl. 468; Barker v. Hartman Steel Co. 129 Pa. 551, 18 Atl. 553.

ern Railway Company; it alleged that the defendant was building its railroad through the said borough and had taken possession of Bradford and Warren streets, legally authorized streets of said borough, and that the defendant by occupying said streets in the construction of its railroad was obstructing the public travel unlawfully and without right or authority, and that if the defendant was allowed to construct its railroad as commenced by it and as its abutments were being built in the public streets it would be a permanent obstruction to said streets and the public travel.

The prayers of the original bill were: (1) That the defendant be restrained from taking possession of said public streets, or from building the abutments for said railroad in said public streets; (2) that so far as the defendant has occupied said streets by its abutments it be compelled to remove the same; (3) for a preliminary injunction; and (4) for general relief.

On October 3, 1882, plaintiff filed an amended bill, which set forth the following resolutions of its common council:

South Waverly, Pa., July 5, 1881.

At a special meeting, etc.,

Resolved, By the common council of the borough of South Waverly in council assembled, That the N. Y. L. & W. railway cross Bradford and Warren, at their junction, by an easy grade crossing; that they shall commence the said grade at the knoll in front of the residence of Timothy Hireen, grading at an easy grade, westwardly over said railway; also making an easy grade to not less than 400 feet, if required, at the west of said crossing or to the first knoll reached westward; that the said company shall proceed to grade Warren street, commencing at the top of the first knoll south of said Warren street, grading the same as easily as possible over and for not less than 50 feet north from the center line of said railroad to the best of the company's ability with the land now owned by it; that the said company shall make a good and sufficient wagon road on the north side of said railway, allowing travel on the said north side with wagons, etc., to the under crossing already constructed by said company on Wilcox street and said road to be not less than 37½ feet wide—said crossing to be fixed by the said company to the best of the ability of said company to accommodate the traveling public on Bradford and Warren streets; also that

all the streets intersecting at the head of Warren street shall be about on the same level or grade, as near as possible; also that the said railway company pay the costs already made in this case on the part of the plaintiff, including attorney's fees, all not to exceed $25. The said over crossing to be kept in good repair by said company and well planked not less than 50 feet. (Carried by a full vote.)

Resolved, That the N. Y. L. & W. R. R. Co. have the privilege of crossing the other streets of this borough, according to their present location, bridging Fulton, Loder, and Chemung streets, and that at Center and Ulster streets to be made proper grade crossings by said company. (Adopted.)

Resolved, That when the N. Y. L. & W. R. R. Co. settles with the property owners adjacent to the crossing of Bradford street in the west portion of said borough of South Waverly, then the said company may have the right to purchase on the north side of said railway proper land purchased and made into a street, the same will be accepted by this council in lieu of the land taken by it on that portion of Bradford street mentioned herein. The parties mentioned are those owning property on the south side of said railroad from the crossing to Chemung street. (Carried.)

These resolutions were accompanied by a writing executed by the proper agents of the defendant railway company, stating that the company "accept the conditions of the resolutions passed this day in our presence by the council of South Waverly, in regard to the crossing of Bradford and Warren streets, and the other streets in said borough and agree to carry out the conditions of the same."

The amended bill stated that the company had occupied, crossed, and impeded the streets of the borough; that its railway crossed Fulton street from 6 to 10 feet below the grade, leaving the street in a dangerous condition; that bridges had been erected by the company at Loder and Chemung streets over the railway, where it crossed the streets about 12 and 18 feet below grade respectively; that these bridges were much narrower than the streets, and that footbridges, in extension of the sidewalk were practicable and necessary; that although more than a reasonable time had elapsed since the occupancy of said streets, the defendant company had wholly neglected "the proper performance of its duties in the premises."

The prayer for relief in the amended bill was as follows: "And your orators, in addition to the relief already prayed, pray that the defendant company, by the decree and under the direction of the honorable court, be compelled to properly discharge its duties and liabilities with regard to the subject-matter of this bill."

A demurrer to the bill as amended having been overruled, defendant answered, denying any unlawful obstruction of the streets, alleging that it had, at the request of property owners, sloped the embankment on the sides of its track at Fulton street, so as to make an easy approach to and across the track, and that it had left the sidewalks untouched until some agreement could be arrived at by the parties interested as to the manner of constructing the foot crossing, if one was built, or the wagon bridge, if that should be determined on; that defendant had erected a sufficient bridge at Loder street, and that foot walks were impracticable; that it had also erected a sufficient bridge at Chemung street, and that plaintiff had no right to exact a separate foot walk there or at any other crossing.

The answer admits the passage of the resolutions of July 5, 1881, and their acceptance by the company, but alleges that the borough afterwards passed a resolution substantially repealing and rescinding the resolutions of July 5, 1881, and requiring only a good iron footbridge at Fulton street.

The case was referred, upon bills and answer, to S. R. Payne, Esq., as master and examiner, who found the facts substantially as follows:

1. That plaintiff was a municipal corporation, incorporated under the general borough laws.

2. That defendant is a Pennsylvania corporation, duly chartered November 23, 1880, under the general railroad act of April 4, 1868, and the acts amendatory thereof and supplementary thereto.

3. That about June, 1881, defendant commenced the construction of its road through the plaintiff borough (describing its route).

4. That defendant had built two iron wagon roads over its track in the borough, one at Chemung street, the other at Loder street; that no footbridge had been built at either crossing, but such bridges were practicable and necessary; that these bridges

were each twenty feet wide inside the trusses, and that the approaches to them were eight or ten feet narrower than the original streets; that the sidewalks had not been extended up to the approaches of the bridges, and that it was impracticable that they should be so extended on the approaches as they then were and yet leave the wagon roads along the approaches of sufficient width.

5. That the south approach to Chemung street bridge held the water back on both sides of it in the spring of the year; that a culvert under it was necessary for the removal of water; that the ditches by the sides of the approach were somewhat clogged, and needed cleaning out.

6. That Fulton street is the main means of communication between the plaintiff borough and the adjacent village of Waverly, New York; that from all the circumstances (stating them) the public travel on this was so extensive and of such a nature as to demand for its reasonable safety the erection of a bridge which should combine both footbridges and a wagon bridge, above and across defendant's track where it crosses the street.

7. That on July 5, 1881, the common council of the plaintiff borough passed the resolutions set out in the amended bill, and that the company accepted them; that the resolution requiring a bridge at Fulton street was not rescinded by any subsequent action of the town council.

8. That in carrying Warren street under the railroad its width was decreased about eight feet; that no necessity appeared for this; that the space from the bottom of the bridge over this street to the roadbed was about nine feet, whereas it should be at least eleven.

The master found, *inter alia*, as conclusions of law, that aside from all questions of contract the defendant company was under a legal obligation to restore Fulton street and the other streets of the borough when crossed by its railroad, to their former condition of safety for public travel, if such restoration could be made consistently with the reasonable construction and operation of the railroad, and if not, then to restore them in such way as to cause the least danger and least impediment to public travel; that if such restoration required a bridge at Fulton street (and he had found such bridge necessary) then the defendant was under a legal obligation to build it (Pennsylvania

R. Co. v. Duquesne, 46 Pa. 223; Pennsylvania R. Co. v. Irwin, 85 Pa. 336); and the company's contract with the plaintiff to do so made the obligation no stronger and took from the plaintiff no remedy for neglect to build which the plaintiff would have had in the absence of such contract; that these remarks applied with equal force to the footbridges; and that if they were necessary for the safety of the traveling public, an obligation lay on the defendant to build them.

The master also held that neither assumpsit nor case for damages was an adequate remedy in the case, and recommended a decree requiring the defendant: (1) To attach footbridges to the east side of each of the wagon bridges already constructed over the track at Chemung and Loder streets; (2) to build a culvert under the south approach to the Chemung street bridge; (3) to place a guard on the west side of the south approach to the Loder street bridge; (4) to restore the sidewalks to Loder and Chemung streets; (5) to erect a wagon bridge, with footbridge attachments on each side, at the Fulton street crossing; (6) to remove the east abutment of the Warren street bridge out of the street; (7) to increase the space between the top of the highway and the bottom of the bridge at Warren street crossing to 11 feet.

Defendant having excepted to the master's report, the exceptions were sustained by the court, in an opinion by MORROW, P. J., which was substantially as follows:

1. There is no question as to the right of the defendant to construct its road over the streets in question. The tenth section of the act of 1849 gives the right, and it provides that "whenever any company shall locate its road, in or before any street or alley in any city or borough, ample compensation shall be made," etc. The streets exist by force of the commonwealth's authority, and to the commonwealth belongs the franchise of every highway within its limits as trustee of the public (Danville, H. & W. R. Co. v. Com. 73 Pa. 38); and the defendant, in locating and constructing its road over the streets, exercised the power of eminent domain belonging to the sovereignty of the state. It is a liberty granted by the sovereign and cannot be disturbed except by the sovereign power. It clearly does not belong to individual right. Cleveland & P. R. Co. v. Speer, 56 Pa. 334, 94 Am. Dec. 84.

[Any violation of the law, such as creating and maintaining a public nuisance or unreasonably impeding or obstructing travel, is an injury to the public, and must be redressed by proceedings in behalf of the commonwealth; that is to say, the commonwealth alone can maintain the bill.]  1. If the obstruction is of such a character as to be a public nuisance, it may be abated upon conviction in the quarter sessions.   Northern C. R. Co. v. Com. 90 Pa. 300.

Taking a street for the purpose of a railroad is taking it for public use (People v. Law, 34 Barb. 502; Danville, H. & W. R. Co. v. Com. 73 Pa. 38), and a private party in the absence of a specific right or authority cannot maintain a bill in equity, to enforce specific performance of a public duty.   Buck Mountain Coal Co. v. Lehigh Coal & Nav. Co. 50 Pa. 91, 88 Am. Dec. 534; Cumberland Valley R. Co.'s Appeal, 62 Pa. 218.

2. The resolutions of July 5, 1881, were adopted after the railroad had been located and substantially graded.   The abutment was in Warren street.   Since their adoption the bridges have been built over Loder and Chemung streets, but none over Fulton street.   The master has found the travel at this crossing is dangerous, but he has not found as a fact whether the resolutions were or were not rescinded; but the evidence shows that the defendant constructed portions of its road (after an effort to rescind) under the directions of certain persons, who claimed to act for the borough, but it afterwards turned out no record was made of any such authority.   This may explain why no bridge was built at Fulton street.   Without any contract the defendant had the unquestioned right to construct its road "in and upon these streets," being liable only for an abuse of that right.   As long as there was no violation of law, there was no nuisance, and the company was liable only for damages to owners of lots fronting on the streets.   [The resolutions as a contract were inoperative unless the borough was authorized to make the contract under the act of June 9, 1874.   P. L. 282.]  2.

Admitting that the word "town" in the act must be construed "borough," then the plaintiff had authority to contract with the defendant, "whereby said railroad company may relocate, change, or elevate their railroad in such a manner as, in the judgment of such authorities, respectively, may be best adapted to secure the safety of lives and property, and promote the interest of said county, city, town, or township."

[The defendant did not relocate its road, nor do the resolutions show in express terms any agreement on the part of the defendant to change or elevate its road; and we are asked to hold that the alleged contract was unauthorized and inoperative; but conceding that it was authorized, the public had an interest in the subject-matter of the contract, and a bill for specific performance cannot be sustained. The remedy is by action for damages.] 3. Mine Hill & S. H. R. Co. v. Lippincott, 86 Pa. 481; Whitney v. New Haven, 23 Conn. 624.

The case of Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471, is not in point, because by its charter the railroad was not to impede or obstruct the free use of the streets; the bill was in the name of the commonwealth; and there was no contract between the railroad company and the borough of Erie.

In Pusey v. Wright, 31 Pa. 387, there was a contract to construct a lateral railroad in a certain manner; and on failure to so construct it, it was held that there was a common-law remedy, and the bill was dismissed.

The same rule is recognized in Gallagher v. Fayette County R. Co. 38 Pa. 103, and Smaltz's Appeal, 99 Pa. 310.

Again; prayers one and two in the original bill are not for relief against any infringement of the contract. The third prayer was for an injunction (which was refused) and the fourth for general relief; and I think the prayer in the amended bill,—to wit, that the defendant be compelled by the decree of this court to properly discharge its duties and liabilities "with regard to the subject-matter of this bill,"—is also for general relief, or at most, for specific performance of the contract.

[The whole matter, therefore, is an attempt to have the court direct and superintend the overhauling and reconstruction of the road, including the building of a bridge over Fulton street, according to the terms of the contract. This we are not inclined to undertake, for the reason the contract, except as to the Fulton street bridge, is vague and uncertain; and if it is valid, there is an adequate remedy at law. If it is not valid, and the defendant has violated the law, we think the remedy is either by indictment or by bill in the name of the commonwealth.] 4.

The master did not discuss this question (of the execution of the contract), because his attention was called only to the act relating to the construction of railroads over public highways in townships, and there their duties are prescribed by the act. Nor

does it seem that his attention was directed to the question of streets and highways being held by the council as trustee for the public.

Thereupon, a decree was entered dismissing the bill, and plaintiff took this appeal, assigning as error: (1–4) The portions of the above opinion inclosed in brackets and designated by exponents; (5) the dismissal of the bill; (6) the refusal to enter the decree recommended by the master; (7) the failure to grant the plaintiff the relief to which it was entitled.

*Edward Overton* and *John F. Sanderson,* for appellant.— The plaintiff has such an interest in its highways and bridges as to be entitled to maintain this suit, and its remedies are not abridged because the liabilities of the defendant may be defined by agreement.   Hooksett v. Amoskeag Mfg. Co. 44 N. H. 105; Troy v. Cheshire R. Co. 23 N. H. 83, 55 Am. Dec. 177; Greenwich v. Easton & A. R. Co. 24 N. J. Eq. 217; State v. Gorham, 37 Me. 451; Hamden v. New Haven & N. R. Co. 27 Conn. 158; Philadelphia v. Friday, 6 Phila. 275; Philadelphia's Appeal, 78 Pa. 33.

The jurisdiction of equity in cases of purpresture and nuisance, although not frequently exercised, seems undoubted. Eden, Inj. 259; 2 Story, Eq. § 921; Jeremy, Eq. Jur. § 1.

The bill may be filed by the public authorities of a city or incorporated district.   Smith v. Cummings, 2 Pars. Sel. Eq. Cas. 92.   See also Monmouth County v. Red Bank & H. Turnp. Co. 18 N. J. Eq. 91; Hart v. Albany, 9 Wend. 571, 24 Am. Dec. 165; Frankford v. Lennig, 2 Phila. 403; and Philadelphia v. Lombard & S. Streets Pass. R. Co. 3 Grant Cas. 403.

1. The use of a highway by a railway company having rendered the building and maintenance of a bridge necessary, and the railway company having refused to build, it became the duty of the borough to do so; for upon it, as to the public, devolved the duty of keeping the streets in order.

2. Having built, it could recover from the railway company the cost of the bridge.

3. The duty of the company is founded upon the statute as well as upon the law independently thereof.   Pennsylvania R. Co. v. Irwin, 85 Pa. 336.   See also Woodring v. Forks Twp. 28 Pa. 355, 70 Am. Dec. 134.

A railroad company left a highway dangerous, and the township was held liable. Aston Twp. v. McClure, 102 Pa. 322.

A railroad rightfully constructed and located is not *per se* a nuisance; but it may become such by an improper manner of construction; for by the improper use of legal rights or privileges wrongs may be committed or nuisances created. 1 Rorer, Railroads, pp. 504, 505.

The mere construction of a railroad track across a highway is no nuisance. But it must be constructed in such a manner as not to impede the passage or transportation of persons or property along the same. The necessary running of trains across the highway is not the cause of complaint here; it is the construction of a permanent obstacle in the highway which is a dangerous obstruction to travel, and the maintenance of it there. Such an obstruction of a highway is clearly a nuisance. Northern C. R. Co. v. Com. 90 Pa. 300.

A railroad company has no right in constructing its road across a public highway to encroach upon the highway so as to render it less commodious to the general public without showing some actual or reasonable necessity. Injunction will lie in its absence. Schwenk v. Pennsylvania, S. Valley R. Co. 2 Chester Co. Rep. 177.

A railroad illegally or unduly constructed may be enjoined at the instance of a person suffering special damage, or of the municipal authorities having charge of the highway. Pierce, Railroads, 251.

In Hestonville, M. & F. Pass. R. Co. v. Philadelphia, 89 Pa. 210, the city filed a bill to enjoin the laying of a railroad track. The city failed on the merits; but its right, as a party, to maintain such a suit was not questioned.

By the act of June 19, 1871, P. L. 1361, it is provided that courts may inquire whether corporate acts are rightfully done under corporate franchises, in suits by individuals and other corporations, and grant relief in damages or by injunction. It cannot, therefore, be alleged by the defendant, even if prior to this act the law may be conceded to have been otherwise, that an undue or improper exercise of corporate rights can only be redressed by suit by the commonwealth. Edgewood R. Co.'s Appeal, 79 Pa. 257; McCandless's Appeal, 70 Pa. 210.

The remedy by indictment is inadequate, because an indictment is to punish for past acts, and sentence thereon cannot

regulate future conduct. A railway company cannot be compelled by sentence in such case, either to remove an obstruction or construct a new work. Pittsburgh, V. & C. R. Co. v. Com. 101 Pa. 192. See also Danville, H. & W. R. Co. v. Com. 73 Pa. 29.

Equity, in obvious cases, will interfere and control the action of railway companies in regard to the construction of their works, directing the mode of crossing highways, at the instance of trustees having the charge of the maintenance of such highways. 2 Story, Eq. § 1563.

Courts of equity will decree the specific performance of contracts by a railway company with a landowner with regard to farm crossings and similar works upon lands of the company, in which such party has an interest so material that the nonperformance cannot be adequately compensated at law. 2 Redf. Railways, p. 375.

A court of equity has jurisdiction to enforce specific performance of a contract by a defendant to be defined work on his own property, in the performance of which the plaintiff has a material interest and which is not capable of adequate compensation in damages. Storer v. Great Western R. Co. 2 Younge & C. Ch. Cas. 48; Sanderson v. Cockermouth & W. R. Co. 11 Beav. 497; Lytton v. Great Northern R. Co. 2 Kay & J. 394; Wilson v. Furness R. Co. L. R. 9 Eq. 28; Atty. Gen. v. Mid-Kent R. Co. L. R. 3 Ch. 100; Greene v. West Cheshire R. Co. L. R. 13 Eq. 44; Franklyn v. Tuton, 5 Madd. 469; Lane v. Newdigate, 10 Ves. Jr. 193.

Another ground which makes a court of equity more anxious to decree specific performance of a contract to do certain works, as to build or make a road, is, where the plaintiff by reason of his having parted with his land to the defendant has no opportunity of erecting the buildings at his own cost, and so ascertaining the amount of damages sustained by reason of the nonperformance of the contract. South Wales R. Co. v. Wythes, 1 Kay & J. 200. And see Price v. Penzance, 4 Hare, 506; Storer v. Great Western R. Co. 3 Eng. Ry. & Canal Cas. 106, 2 Younge & C. Ch. Cas. 48; Soames v. Edge, 1 Johns. V. C. (Eng.) 669; Wilson v. Furness R. Co. L. R. 9 Eq. 28.

Again; where there have been acts amounting to a part performance of the contract, the court will compel specific performance, which, without such acts, it might not do. Price v. Pen-

zance, 4 Hare, 506, 509. See also Pembroke v. Thorpe, 3 Swanst. 437, note; Sanderson v. Cockermouth & W. R. Co. 11 Beav. 497; Oxford v. Provand, L. R. 2 P. C. 135; Crook v. Seaford, L. R. 10 Eq. 678; and 1 Lead. Cas. Eq. pp. 1083, 1084.

It may be laid down as a general rule that it is competent for the court to interfere to enforce the specific performance of a contract by the defendant to do definite work upon his own property, in the performance of which the plaintiff has a material interest, and one which is not capable of an adequate compensation in damages. 1 Story, Eq. Jur. § 721, *a.*

The decree recommended by the master is fully sustained by Pierce, Railroads, 251; People *ex rel.* Kimball v. Boston & A. R. Co. 70 N. Y. 569; Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471, and Pennsylvania R. Co.'s Apepal, 93 Pa. 150.

*Willard & Warren* and *Peck & Overton,* for appellee.—A railroad built upon a public street of a city or borough without authority of law is, undoubtedly, a public nuisance; and its construction will be enjoined in equity. Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471.

The converse of this rule is equally true, where by legislative authority the construction of a railroad is authorized upon and over the streets of a city or borough. Ibid. See also Faust v. Passenger R. Co. 3 Phila. 164; and Danville, H. & W. R. Co. v. Com. 73 Pa. 29.

The railway company being fully authorized to occupy and cross the streets, in the grant from the commonwealth, the proviso in the act of February 19, 1849, "not to impede the passage or transportation of persons or property along the same" must be construed liberally so as not to destroy the grant.

In Bacon v. Arthur, 4 Watts, 440, a similar proviso was so construed. See also Ensworth v. Com. 52 Pa. 320; and Monongahela Bridge Co. v. Kirk, 46 Pa. 112, 84 Am. Dec. 527.

In Northern C. R. Co. v. Com. 90 Pa. 300, we are aware that this court held that the construction of a permanent obstacle in the highway which is a dangerous obstruction to travel, and the maintenance of it there, constituted a public nuisance. In that case the entire highway was blocked by a high bank, rendering it impassable without great danger. The case at bar presents no such facts.

That a municipality has no right to impose terms upon a railroad company occupying its streets by authority of the sovereign is too well settled to be doubted, unless that power is expressly delegated. Pierce, Railroads, 247; Rorer, Railroads, 507; Wood, Railway Law, 985; Mercer v. Pittsburgh, Ft. W. & C. R. Co. 36 Pa. 99; Hestonville, M. & F. Pass. R. Co. v. Philadelphia, 89 Pa. 210.

In the case at bar we assert there are but two parties to the transaction, to wit: the commonwealth and the appellee. The commonwealth owns the streets, and has granted the appellee the right to appropriate them without let or hindrance on the part of the appellant. See Philadelphia v. Lombard & S. Streets Pass. R. Co. 3 Grant Cas. 403; Philadelphia v. Trenton R. Co.'s Case, 6 Whart. 43, 36 Am. Dec. 202; Com. v. Fisher, 1 Penr. & W. 466; Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471, and Mercer v. Pittsburgh, Ft. W. & C. R. Co. 36 Pa. 99; Cleveland & P. R. R. Co. v. Speer, 56 Pa. 325, 94 Am. Dec. 84; Georgetown v. Alexandria Canal Co. 12 Pet. 91, 9 L. ed. 1012; Milwaukee v. Milwaukee & B. R. Co. 7 Wis. 86.

"For a nuisance that is merely a public wrong, only a public action can be brought; and that must be done by the proper public functionaries." Mechling v. Kittanning Bridge Co. 1 Grant Cas. 416; Flanagan v. Philadelphia, 8 Phila. 110; Butler v. Butler Gas Co. 4 Sad. Rep. 19.

A bill for specific performance will not lie where the public has an interest in the nonperformance of the covenant; on refusal to perform, the only remedy is a recovery of damages for the breach. Mine Hill & S. H. R. Co. v. Lippincott, 86 Pa. 468.

A court of equity will not indirectly enforce specific performance by way of a preliminary injunction; as by restraining the performance of work unless it be done in a particular manner. Philadelphia & R. R. Co. v. Philadelphia, 8 Phila. 112.

OPINION BY MR. JUSTICE PAXSON:

A careful examination of this record, aided by an able argument at bar, and an exhaustive discussion of the case in the paper books, has failed to satisfy us that the learned judge of the court below erred in dismissing the plaintiff's bill. It is true he differed from the master in his view of the case, but the difference was not upon the facts, but upon the law applicable to the facts.

It must be borne in mind that the railroad company had the undoubted right to construct its road over the streets in question. It was not a trespasser, nor were its acts unlawful. It had the right to cross the street in question under the provisions of the act of 1849, upon making ample compensation to property owners injured. The manner of crossing is a matter resting in the sound discretion of the company. Nothing less than a gross abuse of that discretion would justify the interference of a chancellor, after the road is built and in operation. The case as presented fails to satisfy us that there has been any abuse of discretion.

As to the alleged contract between the borough and the railroad company, of date of July 5, 1881, we have only to say that if the borough regards it as a valid contract, and believes it has been violated, it has a remedy at law thereon. As was well observed by the court below: "The whole matter, therefore, is an attempt to have the court direct and superintend the overhauling and reconstruction of the road, including the building of a bridge over Fulton street, according to the terms of the contract. This we are not inclined to undertake, for the reason that the contract, except as to the Fulton street bridge, is vague and uncertain; and if it is valid there is an adequate remedy at law."

The decree is affirmed and the appeal dismissed, at the costs of the appellant.